We have two cases on the call this afternoon. The first is number 122956, People v. Johnson, Agenda 9. Counselor, are you ready? And are you? You may proceed. Thank you, Your Honor. May it please the Court. I'm Assistant Attorney General Eric Levin on behalf of the people of the state of Illinois. This Court has long held that when a defendant and the state negotiate for sentencing terms, including for a reduced sentencing range in exchange for a defendant's guilty plea, that the guilty plea and the sentence go hand-in-hand as material elements of the plea agreement, and that by agreeing to such a plea agreement, the defendant implicitly undertakes to accept, as fair and justified under the circumstances, any sentence that the court will later impose within the terms of that agreement. These types of negotiated plea agreements are mutually advantageous to both defendants and the state alike. They, of course, allow defendants to ensure that they will not face a sentence within the full range of sentences authorized by law, and at the same time, they allow the state to ensure that if a sentence within the agreement is imposed, the state will not have to spend its limited time and resources defending that sentence on appeal. Because of the mutuality of advantages that these types of plea agreements offer, this Court has long recognized that under Rule 604B, with narrow exceptions for a statutorily unauthorized sentence, or a sentence based on a facially unconstitutional statute, a defendant who is sentenced pursuant to such an agreement and within its terms cannot simply appeal that sentence without moving to withdraw the guilty plea and return the parties to the status quo. The appellate court's holding, however, recognized a vast new exception to Rule 604D that allows virtually any type of ordinary claim of sentencing error, save for a mere excessiveness claim, to be raised on appeal following a negotiated guilty plea. In doing so, however, the appellate court's reading of the rule will strip the state of the finality that was one of the main benefits of such a plea agreement, while allowing defendants to retain the sentencing concessions that they bargained for. That exception, however, will not only swallow Rule 604D by allowing virtually any type of sentencing appeals, despite, as this court has recognized, the purpose of Rule 604D, to reduce the large number of appeals that have been taken following negotiated guilty pleas, but the appellate court's holding will do so in a way that will undermine the reliability of the plea bargaining system and in a way that will ultimately leave both defendants and the state worse off by ensuring that these types of mutually advantageous plea agreements are not reliably enforced. The appellate court believed that its result was dictated by both Rule 604D itself and by concerns of fairness, but it was mistaken in both respects, and I'd like to address both of those aspects of this decision. I'll start with Rule 604D. It's true, as the appellate court noted, that the literal language of the rule, by referring to sentencing or challenges to sentences as excessive, could on its face be read as prohibiting only mere excessiveness claims and allowing all other types of claims. But I think there's two reasons why that reading of the rule can't govern here. The first is that the cardinal rule of both statutory construction and the construction of this court's rules is to give effect to the drafter's intent. And, of course, in the normal case, that intent is best determined by the plain language used by the drafters. But that's not always the case, and I think this is one of those rare cases where it's not. It's demonstrably not the case. And so the first reason why is if we look to Rule 605C, and it's important to remember that at the same time the drafters adopted, or this court adopted, the relevant language of 604D, it also adopted Rule 605C. And Rule 605C provides the admonishments that are given to defendants who are sentenced following negotiated guilty pleas. And as this court has recognized, those admonishments are intended to complement Rule 604D and to serve as a corollary to its requirements and to its limitations. And Rule 605C makes no mention and gives no admonishments to defendants who are sentenced following negotiated guilty pleas of any right to challenge dissent, whether as excessive or on any other grounds. And the appellate court itself recognized that its reading of Rule 604D created an anomalous situation with respect to Rule 605C in which a vast new array of ordinary claims of sentencing error will be appealable under Rule 604D, but such defendants will receive no admonishments that they have the right to raise those types of claims on appeal, and will receive no admonishments about how to perfect those appeals and preserve their claims. So I think that's strong evidence that the framers of both of these rules did not intend for Rule 604D to allow for the virtually limitless types of sentencing appeals that the appellate court's holding would allow. The second reason why Rule 604D should not be interpreted in light of its literal language is that that language is inconsistent with this court's prior precedence. And this court has in the past, particularly in People v. Evans, where it was interpreting this very rule, has recognized that oftentimes the court will amend the rules in a manner to codify this court's prior precedence. And the court recognized in Evans, in Evans in particular, the court looked past what appeared to be the plain language of a recent amendment, and instead recognized that that amendment had been intended by the drafters to codify this court's prior decisions, and the court therefore interpreted the rule in light of those prior decisions. And I think the court should do the same thing here. It seems evident that the amendment to Rule 604D that we're discussing today was adopted to codify this court's string of decisions, which started with People v. Evans, and went through Linder and Williams and Wilson, and ultimately culminated in Diaz, where this court adopted a certain balance, recognizing that in the vast majority of cases, in cases presenting ordinary types of sentencing error, a defendant who's sentenced pursuant to a negotiated plea agreement can't simply appeal the sentence while retaining the benefits of the agreement itself. Instead, that defendant is restricted to seeking to withdraw the agreement itself, withdraw his guilty plea, and put the parties back in their prior positions. And in Diaz itself, the final case in that series, this court rejected an argument by a defendant that a claim of improper evidence being admitted at the sentencing, so not a mere obsessiveness claim, this was a claim that the trial court committed a legal error in the sentencing proceedings themselves. Diaz held that that type of claim cannot be raised following a negotiated guilty plea. And instead, the court recognized that the exception it adopted in Williams and Wilson is narrowly limited to claims of statutorily unauthorized sentences. And so Diaz was issued by this court in August of 2000, and just months later, I believe in October of 2000, is when the relevant language of Rule 604D was adopted by the framers and by this court, and it went into effect in November. And so if the appellate court's reading of Rule 604D was correct, we would have to assume that the framers of the rule and this court in adopting it intended to essentially abrogate Diaz itself and the series of cases that led up to it essentially silently without making clear that that's what it was doing. Despite the general canon that both the legislature and this court in adopting rules is presumed to know the current state of the law and is not assumed to upset that law or change that law unless that intent is clearly manifested. And so I think that's the case here where the framers intent, as evidenced both by the contemporaneous enactment of Rule 605C and by its desire to codify this court's prior decisions, was not to overrule Diaz, but instead to codify Diaz and the cases that led up to it by instituting the rule that this court had previously adopted which prohibits ordinary sentencing appeals following negotiated guilty pleas. By the same token, the appellate court was mistaken in thinking that this result is unfair or undermines the integrity of the proceedings. The appellate court's rationale overlooks the fact that this was a freely entered into agreement by both the defendant and the state which provided benefits to both parties. The defendant in a sense bargained away the possibility that there might be a sentencing error that he would be able to appeal in exchange for the certainty. But what kind of sentencing error? I mean, is there a difference between finding a sentence is unauthorized by statute and finding that a sentence was imposed as a result of considering improper factors? I think there is. I think there's a critical distinction between those two types of errors, which the court recognized in People v. Arna and the other cases where this court adopted and applied the void sentence. And that rule rested on the critical distinction between a court imposing a particular sentence which it had no authority under the law to impose and which at the time it was thought to exceed the court's jurisdiction to impose. And on the other hand, ordinary types of legal or factual errors that a court might make in fashioning a sentence that is otherwise appropriate under the law. And so that was a critical distinction that underlay the void sentence rule itself and on which Williams and Wilson rested. But you said that the defendant bargained away any challenges to legal errors. Yes. Essentially, as the court has recognized, and I believe Justice Tice recognized in People v. White, in many cases where a defendant's guilt is not really an issue, the driving force behind the defendant's participation in the plea bargaining system is to move the sentencing range as low as possible. That's the ballgame for the defendant. And oftentimes the defendant will find it more advantageous to ensure the certainty of a sentence within a reduced range rather than facing the full range available under the law but retaining the ability to appeal particular sentencing errors that might occur in the course of imposing that sentence. And so if the defendant values the right to insist on an error-free sentencing and to appeal any sentencing errors a court might make, the defendant is free to retain that right, but he can't essentially have it both ways. He can't accept the sentencing concession from the state while retaining the ability to appeal. I don't think that the defendant would bargain away something the judge would do in legal error if he knew that. Well, I don't know that we can say that. I think it would depend on how generous the sentencing concession offered by the state was. I mean, it's been the law in this state since at least 1977 in People v. Casey that by agreeing to a plea agreement the defendant implicitly undertakes to accept the sentence imposed by the court as fair and justified under the circumstances. So I think we can assume here that the defendant valued the certainty of lowering the sentencing range more than he valued the right to appeal a potential error. And again, that an error might occur is only a potentiality. There's no guarantee that the court's going to make an error. But it is the case, unfortunately, that as human beings, trial judges like the rest of us will occasionally make mistakes in rendering a sentence. But it will often be in a defendant's interest, as it apparently was here, to lower the sentencing range itself and not insist on the right to appeal those sentences, those sentencing errors. And of course, it's important to recognize that the state doesn't extend sentencing concessions like that for nothing in return to it. The state derives a certain amount of finality from such agreements. It gives up the potential to argue for a higher sentence within the statutory range in exchange for the certainty that it won't have to expend its time and resources defending that sentence on appeal. Let me ask you, in our record here, the state also dismissed some charges, right? Correct. How many? Do you know? So the defendant was charged with a Class X offense, which had a sentencing range of six to 30 years, three Class Is with sentencing ranges of four to 15 years, and then I think four or five but lesser included offenses with lower sentencing ranges. And so the crux of the deal, essentially, was the state agreed to dismiss the Class X offense charge and one of the Class I's and all of the lesser included's and allow the defendant to plead guilty to two of the Class I offenses. And further, the state agreed to then cap the sentence for those Class Is at two years below the statutory maximum. So all told, the defendant reaped a substantial reduction in his sentencing exposure by this guilty plea, and I think this is evidenced by the fact that even now, even with this apparent error by the trial court, the defendant has no desire to withdraw his guilty plea and put the parties back in their original positions. Did the state reinstate those other charges, or is it too late? I don't know if the state could or not. I think that the statute of limitations would probably be told during this period, so we're still on direct appeal. So I think the state likely could, or more likely the parties might go back to the bargaining table and the state might still agree to dismiss the Class X, but it's very unlikely that the state would further agree to the sentencing concession of lowering the range for the Class I if it couldn't reliably know that it was not going to have to defend that sentence on appeal. I mean, then essentially the state is a heads-I-win, tails-you-lose situation where the state extends the benefit but can't reliably predict whether it will be able to reap the benefit that it derives from taking the case. And this court has consistently recognized, fairly recently, in People v. Donaldson, in Ray Derrick O.G., that plea agreements are not one-sided affairs. There are benefits and promises made by both sides, and both parties have to be bound by the agreements they make or else the system itself will be undergone, and in a manner that ultimately won't benefit defendants as a class. And so I think that's an important point to keep in mind here. The appellate court's ruling no doubt would benefit this defendant today. He would be able to retain the sentencing concession that he bargained for but would not be held to the promises he made. But going forward it's quite likely that the incentives created by that rule would make the state less likely to extend sentencing concessions or, at the very least, more likely to extend less generous sentencing concessions because it wouldn't be able to ensure that it could derive the benefit of finality that makes these agreements mutually advantageous. So ultimately the appellate court's ruling here creates a vast new exception to Rule 604D that, as the Third District recognized, will essentially swallow the rule itself. And so a rule that was intended to reduce the large number of appeals being taken from negotiated guilty plea agreements will instead prohibit only a small category of such appeals, namely those appeals where a defendant merely claims that the sentence was excessive and which ultimately most defendants could not prevail on in any event. And this is not in keeping with the intent of Rule 604D as this Court has previously interpreted it or with the intent of the framers of Rule 604D. If there are no further questions, we would ask the Court to reverse the appellate court's decision and remand with directions to dismiss the defendant's appeal. Thank you. Thank you, Your Honor. May it please the Court. Counsel. My name is Salome Kiwara-Wilson and on behalf of the Office of the State Appellate Defender, I represent Mr. Octavius Johnson. In this case, the State takes the extraordinary position that in pleading guilty pursuant to a negotiated guilty plea, the defendant takes the risk or accepts the risk that the trial court will consider improper factors in aggravation when sentencing him pursuant to the guilty plea. The State argues that the possibility that the trial court would make this error is part and parcel of the bargain. The State argues that this is so, even though Mr. Johnson was not so admonished during the trial when the court took the guilty plea, that he was giving up his right to a fair sentencing hearing and he did not expressly waive that constitutional right. The State's position is extraordinary because it would leave a defendant who pleads guilty pursuant to a negotiated guilty plea to be sentenced based on an improper aggravating factor, for example, race, nationality, religion, gender, physical disability, or any other improper factors, and leave that defendant with a difficult choice whether to withdraw his guilty plea and give up all the benefits that come with that or to accept the court's errors and accept the sentence that may have been increased because the court considered improper factors. Can you tell us, in this case, what are the improper factors that you're alleging took place here? That the court considered the societal harm involved in the delivery of controlled substances and that the court considered the financial gain in selling controlled substances. What specifically did the trial court say? The trial court considered, again, the social, said specifically that it was considering the societal harm or the harm that he had caused as part of an aggravating factor and also that he received financial gain from this crime. Counsel, could you explain that? That's because it's inherent in the crime itself and it shouldn't, so he doubled it. Is that what effective it was? Correct. In the aggravated factors? Yes. And the Fourth District so found, because this wasn't an issue that the state contested below, the Fourth District owing its briefs to this court. To accept the state's position as to the consideration of improper factors is to accept that the rules of sentencing are a fiction, that they don't mean anything. As long as the sentencing court sentences the defendant within the terms of the plea agreement and within the statutory limits. The defendant isn't left without a remedy, right? I mean, you say it's a difficult choice to decide in a situation such as we have before us whether to accept what you know was an incorrect ruling by the trial judge, but isn't that pretty similar to what's done when there's a guilty plea decided on in the first place? There's a weighing that takes place, right, as to potential sentences and whatnot. So this, even though there was a mistake made here, it was within the sentencing range and it was what was contemplated when the guilty plea was made, right? So it's not like the defendant doesn't have a remedy. He just has another choice. Do you move to vacate the guilty plea as a result of this or do you say, hey, I'm still getting the benefit of my bargain in the first instance? Well, in the first instance, when the defendant makes the guilty plea, he's weighing all the options. He knows what his options are. You face all nine counts in this case and up to 60 years in prison because of the Class X. But when he receives a sentence that is within the statutory limits, within the plea bargain, but that was arrived at by the court's consideration of improper factors, he doesn't have a choice in that. His constitutional right for a fair sentencing hearing has been affected and his choices are now to withdraw the plea, go back to facing 60 years, or just take the sentence because he has no option to file a motion to reconsider. Asking him to file a motion to withdraw his guilty plea leaves him in a position whereby he, again, has to go back. It's not a guaranteed right to have to withdraw his guilty plea. Therefore, he has to convince the court. He has the burden of convincing the court that his plea should be withdrawn. And it's in a situation where the Illinois law limits the kind of claims he can make in order to get his plea withdrawn, which is not fair. It's fundamentally unfair to ask the defendant to bear that burden when the error is not his. And I understand that you represent the defendant in this case. Are you troubled at all by what opposing counsel said with respect to the lack of incentive to enter into these type of plea arrangements if there's a chance that if there's an improper sentencing factor taken into account by the trial judge that that can be appealed without a motion to vacate the guilty plea? I would argue that there's incentives on the other side. If you're telling defendants that they're giving up their constitutional right to a fair sentencing hearing without warning them about it before they plead guilty, it would give defendants pause to take plea agreements, thereby crippling the same plea bargaining system that the state seeks to preserve. Allowing defendants to file a motion to reconsider is actually more beneficial to preserving that plea bargaining system because then it allows the errors to be corrected right there at the trial court. If the motion to reconsider is all that is filed, the trial court can look at it, decide, oh, yes or no, whether I consider the improper factors, and then re-sentence the defendant within the terms of the plea agreement. If then the court sentences the defendant underneath the 13-year path in this case, the defendant will not have another claim of excessiveness because in that case the court did sentence improperly, no errors within his agreed-upon path. This is the difference between an improper sentencing claim and an excessive sentencing claim. In an improper sentencing claim, the defendant is arguing that the trial court interfered with his constitutional right. In an excessive sentence claim, the defendant is simply asking for less time. With an improper sentence claim, the defendant doesn't necessarily disagree that the 13 years or that the cap is fair because that's what he agreed to, but he does so in an excessive sentence claim. This court's decisions, this court's precedent supports a finding, as the fourth did, that this is the kind of claim that can be allowed to proceed on a motion to reconsider as opposed to requiring the defendant to withdraw his plea. In People v. Evans, this court recognized that although the plea bargain exists in a criminal justice structure, it is governed by contract law principles, the defendant's underlying contract right is constitutionally based, and therefore it reflects a concern that differs fundamentally and run far wider than those of a commercial contract. In order to review the limits placed on a defendant, under Rule 604D, in a negotiated plea scenario, as we have in this case, the court must consider the constitutional implications of finding that the defendant, sub silencio, gives up his rights to a fair sentencing hearing and that that silent waiver is a part of the plea agreement. The court district's decision correctly undercuts the state's assumption of risk argument by finding that it could be said that a plea agreement relies on the basic assumption that the trial court will conduct a proper sentencing hearing and consider only proper sentencing factors. This court's precedent, again, in Evans and Linder and cases in between, has found that by agreeing to plead guilty, the defendant is only agreeing not to challenge his sentence as being excessive, and that's what the language that is in the plain language of Rule 604D. Diaz comes shortly before the Rule 604D is amended, but the language does not take out the as excessive, even after Diaz. The as excessive language survives the amendment and comes from Linder. Therefore, following that plain language, the court district's decision was in line with this court's precedent. We argue that Diaz is factually distinguishable, and the court in Diaz was determining what kind of negotiated plea agreement was involved. They weren't determining the as excessive versus an improper sentence. And to the extent that they were, we ask that Diaz be reconsidered. There are a few other issues I would like to point out in terms of the defendant in the motion to withdraw his plea agreement. As I've noted, the motion to withdraw the plea agreement punishes the defendant for something that he did not cause, that is, the trial court's error. But it deprives him of the benefit of his bargain because of a third-party frustration of purpose, which is fundamentally unfair. And this court's precedent in looking at this issue has always been concerned with the fundamental fairness of allowing the defendant to appeal the error despite the guilty plea. The leave to the motion to file to withdraw his plea also doesn't address the error in question because the error is at sentencing, and the error has to do with the trial court's conduct. Can I ask you a question? Does this problem only come up in pleas that are a cap, in other words, a range? So we have open pleas with defendant pleads guilty, and then the judge is going to use whatever discretion that is appropriate. Yes. Here in the middle here you have the agreement is there's a range of sentences from which the judge can choose, and so the judge is going to be using some kind of discretion. Would your argument be the same if this were a fully negotiated plea in the sense that the defendant was told, if you plead guilty you will get ten years? And then he pleads guilty and he gets ten years, and in that sentencing hearing the trial court said, this is a delivery of controlled substance case, and because there was financial benefit to you as part of that, I'm going to give you, that's one of the factors I'm looking at, to give you ten years. I believe the argument wouldn't change because even then, even when there is a fixed sentence, the court still has to follow or to give the defendant his constitutional right to a fair sentencing hearing. The court couldn't tell the defendant, because you agreed to ten years, and I don't like some mutable characteristic of the defendant, I will sentence you to ten years, but that's why. Because the court always has discretion whether to accept the recommendation from the state or not. The argument in that situation would not be as compelling as it is when there is a range, a sentencing cap, as there is in this case. The tension that exists between Rule 604D and Rule 605C alone is not a compelling enough reason to deny the defendant the right to challenge the sentence that is based on an improper sentencing factor. Does Rule 605C need to be amended? Yes. If one of the rules needs to be amended in order for the two to be read without conflict, then Rule 605C should be amended as opposed to Rule 604D being read as somehow limiting defendant's rights. Because Rule 605C informs the defendant of the rights that Rule 604D gives them, and it doesn't give any rights, Rule 605C that is. It doesn't give any rights or take away any rights. Therefore, if one of the rules is to be amended, Rule 605C should be amended. In a system where there's a large number of felony convictions in Illinois as a result of a plea bargain, to hold that a defendant who pleads guilty pursuant to a negotiated plea essentially gives up his due process right for a fair sentencing hearing without being so admonished would undermine the judicial integrity for the sake of finality. The Fourth District arrived at the fair and just conclusion in interpreting Rule 604D to permit the defendant to file a motion to reconsider as opposed to requiring him to go back to square one by filing a motion to withdraw and face all the sentences and all the charges that he faced before when he did nothing to cause the error that is present. For those reasons, we ask that this Court affirm that ruling.  Thank you, Your Honor. I have just a few brief points. First, the defense counsel argues that the defendant here was not admonished, that he was waiving his right to appeal for a mere sentence of errors as a result of his negotiated guilty plea. But it has been well settled in the state since People v. Spaces, more than 40 years now, that by entering a plea agreement with the state involving a sentencing concession, the defendant, quote, implicitly undertakes to accept as fair and justified under the circumstances the sentence imposed by the court. The defendant here was represented by counsel throughout the plea process, and he's never alleged, particularly in the motion to withdraw his guilty plea that he did file and subsequently abandoned on appeal, he never alleged that he did not understand the consequences of that plea, and in particular the consequences that Rule 604D had for the plea. And to the extent that he does have an argument that the plea,  the remedy would not be to reform the agreement in a manner that allowed him to retain the benefits of the agreement, but strip the state of some of the benefits that did derive from the agreement. The remedy would be to allow him to withdraw the guilty plea and put the parties back in their prior positions to either go to trial or resume plea negotiations. But again, the defendant has apparently no desire to withdraw his guilty plea. So in the trial court, the defendant, both pro se and with counsel, raised sentencing issues, correct? Well, in the trial court, the defendant filed a pro se motion to reduce his sentence, essentially on mere excessiveness grounds. When the trial judge informed him that he couldn't simply move to reconsider his sentence, but instead had to seek to withdraw his guilty plea, a new lawyer was appointed who then did file a motion to withdraw the guilty plea. It was essentially a bare bones motion with not a whole lot of supporting reasoning that would justify withdrawing the guilty plea, but there was a hearing on the motion and the trial court denied it. Denied the merits of it? Of the motion to withdraw the guilty plea? Yes. And on appeal. So it was the first time on appeal then that this argument about the statements of the trial judge during the sentencing hearing were raised. Is that right? Yes. The defendant abandoned the challenge to the guilty plea on appeal and instead, for the first time, argued about the improper aggravating factors of alleged legal abuse. Is that forfeiture? Yes. And the defendant recognized in the appellate court that he had forfeited those challenges and asked for a plain error review. And it is true that in the appellate court, we neither contested that error had occurred nor that it was not plain error. And so we have not raised that argument here because we didn't raise it below. I do think it's worth noting that the appellate court's plain error analysis is somewhat questionable in that it purported to find pronged to plain error, but yet also stressed that these types of errors will not always be plain error, whereas pronged to plain errors are generally the types of errors that either are or are not plain error regardless of the particular facts of the case. Instead, the appellate court appeared to do either a prong one analysis or some combination of the two prongs in finding that in these particular circumstances in light of the evidence and the fact that there were allegedly two errors, it was plain error. But I don't think we can rely, I don't think we can assume that this is the type of error that will always be a sort of structural pronged to plain error. Which leads me to the next point I'd like to make, which is that it seems to me that the defendant's argument rests very heavily on the notion that certain egregious due process violations should not be held to be barred by Rule 604D. And the classic example of that would be if the trial court relied on a defendant's race or religion or any other sort of protected classification. And we would absolutely agree that if a case like that ever arose, and if the state had not conceded error, which I believe it would, but if a case like that ever got to this court, we would not hesitate to concede that that would be another exception, a narrow exception that the court should add to the exceptions for statutorily unauthorized sentences or sentences based on facially unconstitutional statutes. Because an egregious type of due process error like that truly does go beyond just the defendant's interest in an error-free sentencing hearing, but affects the integrity of the proceedings and society's interest in upholding the integrity of those proceedings. But the same can't be said for just the types of ordinary sentencing errors, which although unfortunate, are foreseeable. It is a fact that it is foreseeable that trial courts will occasionally make errors of law, be it in relying on a statutorily inapplicable aggravating factor, or in not applying a mitigating factor that the evidence suggests should be applied, or as in Diaz, allowing improper evidence and considering that evidence in fashioning the sentence. And so it's not the case that our rule depends on the notion that the sentencing rules are a fiction, as my opponent says. But rather, our rule recognizes that there will often be things that defendants value more than they value the right to insist on an error-free sentencing hearing. And in particular, they will often value the ability to lower their sentencing range more than they value the right to face the full range of sentences available, but yet retain the right to raise ordinary sentencing errors on appeal. Is that the same argument that would be made in response to a motion to vacate guilty plea? I think the arguments in that context would be different. The defendant there would have to – there would be a number of ways the defendant could successfully withdraw the guilty plea if he could show that the plea was not made knowingly and voluntarily, if he could demonstrate that he had received ineffective assistance of counsel in the plea process, or I think Evans recognized other types of – But specifically as it relates to the sentence, would you say the same thing? Would you say that as part of the bargain, the state was getting a bargain that said at the time of the guilty plea, they recognized they might have a sentence that included a sentencing error? That the state recognized that? Well, that the defendant recognized that when they entered into the plea, just like you just communicated. Yeah, so I don't think the mere fact that the trial court then did commit an ordinary sentencing error would be grounds to allow the defendant to withdraw his plea. The standard for withdrawing pleas has always been higher than that, always been higher than simple dissatisfaction with the sentence. It would have to be something that undermined the validity of the plea itself or perhaps some sort of manifest injustice, and I think Evans used that terminology, which might apply where the court imposed a statutorily unauthorized sentence or simply engaged in an egregious due process violation by relying on race or religion. My point is, is the defendant really actually left with no choice? Because you said, well, even to this day, the defendant doesn't want to withdraw their guilty plea. Well, you know, they did get the benefit of the bargain. They got a sentence within the range, mistake or no mistake, made by the trial judge. So is the defendant's counsel right? They're left with a pretty difficult situation if they have a right to a fair sentencing hearing or expecting a fair sentencing hearing, and then can't even use that fact to try to vacate the guilty plea if they chose to. Well, it's certainly the case that, yes, the defendant is faced with a difficult choice, but defendants throughout the criminal justice system are faced with difficult choices every day, particularly in the plea bargaining process, and where a defendant like this defendant received a substantial sentencing concession from the state and does not wish to disgorge that benefit, I don't think it's the case that it's unfair to hold him to the bargain that he made in return for that sentencing concession. And I'd just like to close with the fact that I think my opponent made a fairly key concession in response to Justice Tice's question about whether the defendant's rule would apply equally to the situation where the parties negotiated for a specific sentence. But it will often be the case that even though the parties negotiate for a specific sentence, the court will still hold a sentencing hearing and consider the factors of aggravation and mitigation and will in some cases make an error and say that I'm relying on this improper factor or that improper factor, and I conclude that the sentence that the parties negotiated for is appropriate and I apply it. If I understood correctly, the defendant's argument is that Rule 604D would not bar an appeal in that situation, and I think that's diametrically opposed to Peeble v. Evans and would require this court to overrule Evans, which the defendant has never asked for previously and which I don't think there's any basis in this court's precedent for doing so. If there are no further questions, again, we would ask the court to reverse the appellate court's decision and dismiss the defendant's appeal. Thank you.  Case number 122956, Peeble v. Johnson, will be taken under advisement as Agenda Number 9. Mr. Levin, Ms. Duara-Wilson, thank you for your arguments this afternoon. You are excused for that. Thanks.